127 P.3d 187

**Frank C. NEWBERRY, Plaintiff–Respondent,**

v.

**Laurence L. MARTENS, M.D., Defendant–Appellant,**

and

**Twin Falls Clinic and Hospital, and John Doe and Jane Doe, husband and wife, I through X, and Business Entities I through X, Defendants.**

No. 30967.

Supreme Court of Idaho,
Twin Falls, November 2005 Term.

Dec. 30, 2005.

Tolman Law Office, Twin Falls; Gjording & Fouser, PLLC., and Bobbi K. Dominick, of Counsel, Boise, for appellants. Bobbi K. Dominick argued.

Pedersen and Jackson, Twin Falls, for respondent. Kenneth L. Pederson argued.

BURDICK, Justice.

Laurence Martens, M.D. (Dr. Martens) appeals from a district court judgment ordering him to pay damages to Frank C. Newberry (Newberry) for medical malpractice. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

One night while repairing an automobile, Newberry, who was hammering metal on metal, felt something strike his right eye. Newberry immediately felt a burning sensation and saw spots in his field of vision. He was driven to an emergency room in Twin Falls where Dr. Martens, a family practice physician, was on duty. Dr. Martens examined Newberry's eye, but was unable to locate any foreign matter. Dr. Martens determined that most likely an object struck Newberry's eye, causing a superficial laceration, but deflected away without penetrating. Dr. Martens prescribed Newberry antibiotics and sent him home with instructions to return the next day.

When Newberry returned the following day, Dr. Martens again examined his eye. Newberry reported that the spots in his vision remained but that the burning sensation was less severe. Seeing nothing of concern, Dr. Martens again sent Newberry home.

The day after this second visit, Newberry experienced extreme pain in his eye and increasing disturbances of his vision. Later that day, he lost all vision in his right eye. Newberry sought medical treatment from Dr. David Leach, (Dr. Leach) an ophthalmologist. Dr. Leach located a small piece of metal deep in Newberry's eye, and sent Newberry to Salt Lake City for specialized treatment not available in Twin Falls. Doctors performed surgery on Newberry's eye, but were unable to return his vision. It was later determined that Newberry lost his eyesight due to the introduction of a virulent bacteria known as Bacillus–Cereus along with the metal shard.

Newberry sued Dr. Martens and the Twin Falls Clinic and Hospital for medical negligence and other related claims. Twin Falls

Clinic and Hospital was dismissed by stipulation, but Newberry and Dr. Martens proceeded to trial. At trial, Dr. Martens objected to two jury instructions discussing proximate cause, and he also objected to the admission of expert testimony presented by Dr. Leach suggesting that Dr. Martens breached the applicable standard of care for a health care provider. After an eight-day trial, a jury returned a verdict in favor of Newberry and awarded him $250,000 in economic damages and $500,000 in non-economic damages. Following post-trial motions, the district court adjusted the economic damages from $250,000 down to $39,843.05, resulting in a total judgment of $539,843.05. Dr. Martens filed a timely appeal from that judgment which is now before this Court.

## II. STANDARD OF REVIEW

■ "The standard of review for issues concerning jury instructions is limited to a determination of whether the instructions, as a whole, fairly and adequately present the issues and state the law. When the instructions, as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error." *Bailey v. Sanford*, 139 Idaho 744, 750, 86 P.3d 458, 464 (2004) (quoting *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 882, 42 P.3d 672, 675 (2002)).

■ The decision whether to admit expert testimony is within the sound discretion of the trial court and will not be overturned absent a showing the trial court abused that discretion. *Kolln v. St. Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997).

## III. ANALYSIS

On appeal, Dr. Martens presents two issues. First, he argues the jury instructions given below were in error. Second, he contends the district court erred in permitting one of Newberry's experts, Dr. Leach, to present expert testimony that Dr. Martens breached the applicable standard of care.

## A. Jury Instructions

■ It is Dr. Martens' position that two jury instructions in particular were in error. At trial, these instructions were numbered 10 and 11, and both dealt with proximate cause. The instructions at issue were not identical to the standard pattern jury instructions, but a court may diverge from those instructions if a "different instruction would more adequately, accurately or clearly state the law." I.R.C.P. 51(a)(2). Instruction number 10 stated:

When I use the expression "proximate cause," I mean a cause which, in natural or probable sequence, produced the damage complained of. It need not be the only cause. It is sufficient if it is a substantial factor concurring with some other cause acting at the same time, which in combination with it, causes the damage.

Instruction number 11 read:

A cause can be a substantial contributing cause even though the injury, damage or loss would likely have occurred anyway without that contributing cause. A substantial cause need not be the sole factor, or even the primary factor in causing the plaintiff's injuries, but merely a substantial factor therein.

From Dr. Martens' perspective, the problem with these instructions is that they permitted the jury to assign liability if the plaintiff met the "substantial factor" test, rather than the arguably stricter "but for" test. While the "substantial factor" test inquires into whether the defendant's conduct substantially contributed to the plaintiff's injury, the "but for" test asks whether the complained of injury would have occurred "but for" the defendant's alleged negligence—in other words, what would have transpired in a hypothetical world absent the defendant's alleged negligence. *See Doe v. Sisters of the Holy Cross*, 126 Idaho 1036, 1040, 895 P.2d 1229, 1233 (Ct.App.1995).

At trial, Dr. Martens advanced as his theory of the case that he was not liable for Newberry's loss because Newberry would have lost his eye even without Dr. Martens' negligence. In sum, Dr. Martens argued to the jury that his alleged negligence was not a "but for" cause of Newberry's injury. Dr.

Martens contends the district court erred in permitting the jury to assign liability based on the substantial factor test and that so instructing the jury precluded it from considering his theory of the case. Additionally, Dr. Martens argues the "but for" test is properly used in place of the "substantial factor" test in cases such as this where there is only one allegedly negligent cause of the plaintiff's injury.

■ In discussing proximate cause, it should first be noted that it contains two components. First there is actual cause, and second there is true proximate cause, sometimes known as "legal cause." *Munson v. State, Dept. of Highways*, 96 Idaho 529, 531, 531 P.2d 1174, 1176 (1975); *Sisters of the Holy Cross*, 126 Idaho at 1039–40 n. 1, 895 P.2d at 1232–33 n. 1. Actual cause is the factual question of whether a particular event produced a particular consequence. *Sisters of the Holy Cross*, 126 Idaho at 1039–40 n. 1, 895 P.2d at 1232–33 n. 1. True proximate cause "focuses upon legal policy in terms of whether responsibility will be extended to the consequences of conduct which has occurred." *Munson*, 96 Idaho at 531, 531 P.2d at 1176 (quoting *Henderson v. Cominco American, Inc.*, 95 Idaho 690, 695, 518 P.2d 873, 878 (1973)). Phrased differently, it is the defendant's conduct (actual cause) that inflicts the harm, but it is the law (legal cause or true proximate cause) that determines whether liability for that conduct attaches. *Id.* In this case, the question in dispute concerns actual cause.

■ Under Idaho law, in a medical malpractice action where there is evidence of two or more possible causes of the plaintiff's injury, rather than using the "but for" test the jury must be instructed that the doctor's negligence "was a proximate cause of the injury if it was a substantial factor in bringing about the damage."[1] *Fussell v. St. Clair*, 120 Idaho 591, 591, 818 P.2d 295, 295 (1991). This Court has "specifically reject[ed]" the inclusion of the "but for" test where more than one cause could have brought about the injury. *Id.* "The but for instruction and the substantial factor instruc-

tion are mutually exclusive." *Le'Gall v. Lewis County*, 129 Idaho 182, 187, 923 P.2d 427, 432 (1996). In short, the "but for" test may be employed when there is a single possible cause, but when there are multiple possible causes of the plaintiff's injury a "substantial factor" instruction must be given instead. *Id.* at 186–87, 923 P.2d at 431–32.

In *Fussell*, the plaintiffs were the parents of a child who suffered brain damage as the result of a difficult birth. 120 Idaho at 592, 818 P.2d at 296. At trial, the parties presented evidence of two possible causes of the baby's injury: the parents indicated the harm was caused by the defendant doctor's negligence, and the doctor argued that the injury resulted from a prolapsed umbilical cord that occurred naturally and without negligence on anyone's part. *Id.* at 593, 818 P.2d at 297. The trial court in *Fussell* gave instructions to the jury that included the "but for" test, but because there were multiple possible causes of the baby's injury, this Court determined that instructing the jury on the "but for" test under those circumstances was reversible error. *Id.* at 593–94, 818 P.2d at 297–98.

In this case the district court determined that as in *Fussell*, more than one cause was advanced at trial as a possible cause of the Plaintiff's damages. At trial, Newberry stressed as possible causes Dr. Martens' negligence in failing to locate the metal shard and to refer Newberry to a specialist. Dr. Martens stressed causes unrelated to his alleged negligence, such as the presence of the Bacillus–Cereus bacteria. In keeping with *Fussell* and it progeny, the district court therefore deviated from the standard pattern jury instructions to exclude mention of the "but for" test.

Instruction number 10 was taken from standard pattern jury instruction 2.30.2 but omitted the following language: "It is not a proximate cause if the injury, loss or damage likely would have occurred anyway." The district court explained this omission by pointing out that the excluded language was, in substance, simply a rephrasing of the "but

---

1. Subsequent cases have expanded this principle outside the realm of medical malpractice. *See, e.g., Le'Gall v. Lewis County*, 129 Idaho 182, 186–87, 923 P.2d 427, 431–32 (1996).

for" test and therefore inappropriate in a multiple cause case. Indeed, the language stricken by the district court was also omitted by this Court in *Fussell* when stating what instruction *should* have been used in that case. 120 Idaho at 595, 818 P.2d at 299. The second sentence of instruction number 11 used here by the district court was also adapted from language in *Fussell. See id.* (quoting *Fouche v. Chrysler Motors Corp.,* 107 Idaho 701, 704, 692 P.2d 345, 348 (1984)).

Faced with the rule in *Fussell,* Dr. Martens first attempts to distinguish that case by arguing that unlike in *Fussell,* here there was only one possible cause of Newberry's injury—the bacteria. The difficulty with that argument is it simply ignores evidence presented by Newberry that Dr. Martens' negligence contributed to the injury. Dr. Martens was free to argue that he was not negligent, or that his negligence was not a substantial factor in Newberry's loss, but evidence of medical negligence *was* presented as a possible contributing cause. Dr. Martens cannot simultaneously point to a second cause, independent of his negligence, and at the same time maintain that this is a single cause case.

■ Dr. Martens next asserts that by instructing the jury on the "substantial factor" test rather than the "but for" test, the district court wrongly precluded him from arguing his theory of the case—that absent Dr. Martens' negligence Newberry was nevertheless likely to have lost sight in the affected eye. This is incorrect. Nothing prevented Dr. Martens from presenting his factual assertion that Newberry would likely have lost his sight even if there had been no negligence and that medical negligence was not a substantial factor in causing the lost eyesight. What the trial court refused to do was instruct the jury on the "but for" test as Dr. Martens urged. Although Dr. Martens correctly points out that the trial court must "instruct the jury on every reasonable theory recognized by law that is supported at trial," *Everton v. Blair,* 99 Idaho 14, 16, 576 P.2d 585, 587 (1978), in multiple cause cases instruction on the "but for" test is *not* "recognized by law" and consequently Dr. Martens is not entitled to such an instruction. *Le'Gall,* 129 Idaho at 186–87, 923 P.2d at 431–32. Dr. Martens was free to present his

view of the facts to the jury, and at trial he did so. Unfortunately for Dr. Martens, he was unable to persuade the jury that his conduct was not a substantial factor in Newberry's injury.

Dr. Martens next contends that even if there are multiple possible causes, the *Fussell* rule does not apply unless there are multiple defendants and multiple potential acts of negligence. Non-negligent causes, Dr. Martens argues, are not causes at all for the purpose of determining whether a case is a single or multiple cause case. For this proposition, Dr. Martens quotes the following language from this Court's decision in *Hilden v. Ball*:

> we cannot conclude that the trial court erred in viewing this as a single "force" or cause case, and therefore there is no basis for the appellant's claim. First, there was only a single defendant, Dr. Ball, on trial for negligence, and no other doctor or health care provider was mentioned in any of the evidence as having been guilty of negligence which caused or contributed to the death of Mr. Hilden.

117 Idaho 314, 335, 787 P.2d 1122, 1143 (1989).

Dr. Martens' confidence in the quoted language from *Hilden* is misplaced. The language in question was dicta and moreover is contrary to this Court's more recent decisions in *Fussell* and *Manning v. Twin Falls Clinic & Hosp. Inc.,* 122 Idaho 47, 51, 830 P.2d 1185, 1189 (1992). In *Fussell,* this Court determined the possible causes of the baby's injury were (1) the doctor's negligence, and (2) a naturally occurring prolapsed umbilical cord not attributable to the doctor's negligence. 120 Idaho at 593, 818 P.2d at 297. The prolapsed umbilical cord was the "second" cause that rendered *Fussell* a multiple cause case, even though the problem with the umbilical cord was not the result of negligence and even though the doctor was the only defendant. Similarly, in *Manning,* a hospital patient with a severe respiratory ailment died when nurses disconnected his supplemental oxygen supply in order to move him to another room. 122 Idaho at 50, 830 P.2d at 1188. In that case, this Court upheld the district court's application of the *Fussell* rule because there were two possible causes of the patient's death;

(1) the nurse's negligent conduct, and (2) the patient's preexisting ailment, not resulting from negligence. *Id.* at 51, 830 P.2d at 1189. Again, in *Manning* the patient's respiratory illness was deemed a "second cause" resulting in the application of the *Fussell* rule, even though the illness was not the result of negligence. *Id.* As a result, *Manning* also directly contradicts the dicta from *Hilden* on which Dr. Martens relies.

Dr. Martens also argues that there is language in *Fussell* requiring Idaho courts to use the "but for" test in cases where there is only one defendant and only one cause resulting from negligence. For this proposition, Dr. Martens quotes the following language from *Fussell:*

> Although the evidence presented by the Fussells indicated that Dr. St. Clair's negligence was the sole cause of the brain damage and death of the child, the evidence submitted by Dr. St. Clair indicated that there was a cause for which Dr. St. Clair was not responsible—an occult (hidden) prolapsed umbilical cord. Dr. St. Clair's evidence would have supported a finding by the jury that the prolapsed umbilical cord occurred without any negligence of the doctor. *If the jury had accepted this evidence and yet had found that Dr. St. Clair was negligent in responding to the prolapsed cord when it was discovered, the jury might have been misled by the proximate cause instruction given by the trial court.* The jury might have concluded that the doctor's negligence could not have been a proximate cause because even if the doctor had not been negligent, the brain damage and death of the child would have occurred. Stated in the same terms as the last sentence of the proximate cause instruction given by the trial court, the jury might have concluded that the doctor's negligence was not a proximate cause, because the brain damage and death would likely have occurred anyway.

120 Idaho at 593, 818 P.2d at 297 (emphasis as added by Dr. Martens).

When placed in context, the meaning of those words from *Fussell* is roughly the opposite of the meaning given to them by Dr. Martens. It should be remembered that the potentially misleading proximate cause in-

struction at issue in *Fussell* was the "but for" test now advocated by Dr. Martens. *Id.* When this Court in *Fussell* wrote that "[t]he jury might have concluded that the doctor's negligence could not have been a proximate cause because even if the doctor had not been negligent, the brain damage and death of the child would have occurred," the Court was not, as Dr. Martens appears to suggest, promoting such reasoning as exemplary in multiple cause cases. *Id.* Instead, the Court was explaining how the trial court's instructions might have misled the jury into applying the "but for" test in a multiple cause case, and the Court ultimately concluded this was reversible error. *Id.*

Finally, Dr. Martens directs our attention to a pair of policy arguments. The first of these contends that if the existence of a non-negligent possible cause alongside an allegedly negligent possible cause requires instruction on the "substantial factor" test in place of the "but for test," use of the "but for" test would be largely extinguished in medical negligence cases. This, Dr. Martens continues, is because in such cases a non-negligent possible cause can often be found in the underlying physical problem that first brought the plaintiff to seek medical attention. Dr. Martens argues that in crafting *Fussell* and its progeny, this Court cannot have intended such an outcome.

Dr. Martens is correct to observe that the rule in *Fussell* and *Manning* is apt to apply to medical negligence cases in many instances. The subtext of Dr. Martens' argument is that such an outcome—the widespread use of the substantial factor test in medical negligence cases—is unthinkable. It is not unthinkable, and as *Fussell* and *Manning* make clear, it has already been the rule for many years where the trial court is presented with evidence of multiple possible causes. *See Fussell,* 120 Idaho at 591, 818 P.2d at 295 (decided in 1991 and stating that "[w]e hold that in an action for medical malpractice when there is evidence of two or more causes that contributed to the damages suffered, for only one of which the doctor is responsible, the proper proximate cause instruction should instruct the jury that any negligence of the doctor was a proximate cause of the injury if it was a substantial factor in bringing about the damage. We specifically reject

the inclusion of an instruction under these circumstances requiring the claimant to prove that the injury would not have occurred 'but for' the doctor's negligence"); *Manning*, 122 Idaho at 51, 830 P.2d at 1189 (applying *Fussell* under similar facts in 1992); *Le'Gall*, 129 Idaho at 186–87, 923 P.2d at 431–32 (applying *Fussell* outside the realm of medical negligence in 1996); *Doe v. Garcia*, 131 Idaho 578, 582, 961 P.2d 1181, 1185 (1998).

The second policy argument introduced by Dr. Martens contends that rejecting the "but for" test in cases where there is only a single potentially negligent defendant does not serve any valid policy objective. The reason many courts have rejected the "but for" instruction in multiple cause cases, continues Dr. Martens, is to prevent multiple potentially negligent defendants from each escaping liability by assigning blame to each other. Rejecting the "but for" test in a case lacking multiple defendants, Dr. Martens argues, is applying a solution where no problem exists.

Dr. Martens' argument on this point is a cogent one, but there exists at least one policy argument supporting the use of the substantial factor test cases involving multiple causes but only one potentially negligent defendant. The facts of the instant case present a classic "lost chance" scenario. In some other jurisdictions, Newberry would be permitted to advance the theory that even if it were likely he would have lost sight in the affected eye absent Dr. Martens negligence, that negligence robbed Newberry of whatever chance he had for timely, effective treatment. *Manning*, 122 Idaho at 51–52, 830 P.2d at 1189–90. Idaho, however, has declined to adopt the doctrine of "lost chance." *Id.* When doing so, this Court wrote:

> Our review of the cases that have considered the rationale of the doctrines of "increased risk of harm" or "lost chance" convinces us to reject both doctrines. The "substantial factor" standard of proof for proving proximate causation strikes a fair balance between the claimant and the defense. It is not necessary to have any further reduction in the claimant's burden of proving proximate cause.

*Id.* at 52, 830 P.2d at 1190.

We see then that this Court, when it rejected the lost chance doctrine, did so based on its confidence that the use of the substantial factor test in such circumstances "strikes a fair balance between the claimant and the defense." *Id.* Here, Dr. Martens proposes that whatever hope Newberry had to recover under the substantial factor test be taken away as well. Doing so would be contrary to this Court's stated intention in *Manning* to employ the substantial factor test in place of the "but for" test in cases such as this in order to provide a fair balance between claimants and defendants. *Id.*

After reviewing the arguments, it is seen that the jury instructions under examination in this case fairly and adequately presented the issues and stated the law. We consequently affirm their use under the facts presented.

## B. Admission of Testimony Establishing the Standard of Care

■ Dr. Martens contends the district court erred in permitting Newberry's expert, Dr. Leach, to present testimony that Dr. Martens' conduct breached the applicable standard of care. Since Dr. Martens contends that Dr. Leach's testimony should not have been accepted, Dr. Martens argues that the case Newberry presented at trial was fatally deficient and the verdict should therefore be reversed.

The trial court's decision whether to admit expert testimony is reviewed by this Court under the abuse of discretion standard. *Kolln*, 130 Idaho at 327, 940 P.2d at 1146. This Court will not overturned such a ruling absent a showing the trial court abused its discretion. *Id.*

■ Under Idaho law, the plaintiff in a medical malpractice case must offer expert testimony indicating the applicable standard of care was breached by the defendant health care provider. I.C. § 6–1013. The foundation for that expert witness must show:

> (a) that such opinion is actually held by the expert witness; (b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty; (c) that the expert witness possesses professional knowledge and expertise; and (d)

that the expert witness has *actual knowledge* of the applicable community standard of care to which his expert opinion testimony is addressed.

*Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002) (emphasis added). Idaho law defines the applicable standard of care as:

(a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any; (b) as such standard existed at the time of the defendant's alleged negligence; and (c) as such standard existed at the place of the defendant's alleged negligence.

*Dulaney*, 137 Idaho at 164, 45 P.3d at 820 (internal citations omitted) (citing I.C. § 6–1012).

Dr. Leach practiced in the same community, Twin Falls, and at the same time as the events that gave rise to this action. Dr. Leach is an ophthalmologist, whereas Dr. Martens is a family practice physician. Dr. Martens does not contend that Dr. Leach was unqualified to offer an opinion because they belong to different specialties—Dr. Martens correctly concedes that it is unnecessary for an expert witness to be of the same specialty as the defendant so long as the expert establishes he possesses actual knowledge of the standard of care to be applied. *See Clarke v. Prenger*, 114 Idaho 766, 769, 760 P.2d 1182, 1185 (1988).

Instead, Dr. Martens argues that Dr. Leach lacked actual knowledge of the standard of care applicable to family practice physicians because Dr. Leach did not testify that he *explicitly asked* a family practice physician what the standard of care was in Twin Falls. At trial, Dr. Leach testified that he learned the standard of care by practicing alongside family practice physicians in Twin Falls, by providing and obtaining referrals, and by discussing patient care with them. Dr. Martens contends that these interactions with family practice physicians were not enough to provide Dr. Leach with the statutorily required "actual knowledge" of the applicable standard of care.

■ It is necessary for an expert testifying as to the standard of care to "state how he or she became familiar with that standard of care." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. Inquiring with a local specialist is "[o]ne method" an expert witness *may* obtain such knowledge, *id.*, but it is not the only method. Idaho Code § 6–1013 requires that an expert witness must possess "actual knowledge" of the standard of care, but contrary to Dr. Martens' suggestion it does not dictate that such actual knowledge must in all cases be obtained by explicitly asking a specialist in the relevant field to explain the local standard of care.

■ When reviewing a trial court's ruling under the abuse of discretion standard, we inquire (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc., v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). When ruling that Dr. Leach's testimony was admissible, the district court stated its determination was an exercise of discretion. The district court used reason and acted within the boundaries of its discretion when ruling that Dr. Leach's professional interactions with family practice physicians in the Twin Falls area at the time of the events giving rise to the present suit provided Dr. Leach with the requisite actual knowledge of the applicable standard of care. We therefore affirm the district court's ruling admitting the expert testimony of Dr. Leach.

## C. Attorney fees

■ Newberry requests an award of attorney fees on appeal pursuant to I.R.C.P. 54(e)(1) and I.C. § 12–121. Idaho Rule of Civil Procedure 54(e)(1) "creates no substantive right to attorney fees, but merely establishes a framework for applying I.C. § 12–121." *Huff v. Uhl*, 103 Idaho 274, 277 n. 1, 647 P.2d 730, 733 n. 1 (1982). Idaho Code § 12–121 permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation. *Mutual of Enumclaw*

*Ins. Co. v. Pedersen,* 133 Idaho 135, 139, 983 P.2d 208, 212 (1999). Dr. Martens' arguments, while unpersuasive, raised issues concerning proximate cause that were not frivolous, unreasonable, or without foundation. We therefore decline to award attorney fees in this case.

## IV. CONCLUSION

This Court affirms the judgment entered by the district court in all respects. Costs, but not attorney fees on appeal, are awarded to Newberry.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.

