46 P.3d 1105

**Sharon GROVER, Plaintiff–Appellant,**

v.

**David G. SMITH, Defendant–Respondent.**

No. 26455.

Supreme Court of Idaho,
Boise, December 2001 Term.

April 12, 2002.
Rehearing Denied May 24, 2002.

Lojek Law Offices, Boise, for plaintiff-appellant. Donald J. Lojek argued.

Quane Smith, Boise, for defendant-respondent. Bruce R. McAllister argued.

KIDWELL, Justice.

Sharon Grover filed a complaint alleging dental malpractice against Dr. David G. Smith. Grover appeals the district court's grant of summary judgment in favor of Dr. Smith.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Sharon Grover (Grover) was a patient of Dr. David G. Smith (Dr. Smith), a general dentist practicing in Fruitland, Idaho. In addition to knowing him as her dentist, Grover also knew Dr. Smith through the leadership position he held in their church. Grover had chronic problems with her upper left teeth, particularly in 1995 and 1996. In the fall of 1996, Grover began complaining of pain on the upper right side of her head, above her temple. Without examining Grover, Dr. Smith diagnosed the pain as a continuing problem with her upper left teeth and prescribed painkillers over the telephone.

On January 4, 1997, Grover called Dr. Smith at home to complain of intense pain on the right side of her head. Dr. Smith told her that a tooth, perhaps two teeth, would need to be pulled, and that he would refer her to an oral surgeon. On January 7, 1997, she went to the oral surgeon to have one or more teeth removed. Grover suffered an intra cerebral hemorrhage (stroke) while in the oral surgeon's chair, did not wake up from the anesthesia, and had brain surgery as a result of the stroke. She is now paralyzed on her left side.

On January 7, 1998, Grover filed her complaint alleging dental malpractice by Dr. Smith because he failed to refer her to a medical doctor following her repeated complaints of severe headaches. On July 6, 1999, Dr. Smith moved for summary judgment, contending there was no genuine issue of material fact. He also argued that Grover failed to produce expert testimony regarding the local community standard of care as specified in I.C. §§ 6–1012, –1013. Dr. Smith submitted his affidavit in support of his motion, in which he asserted that he had not deviated from the community standard of care. On July 22, 1999, Grover filed a motion for continuance. Grover submitted her husband's affidavit in opposition to the motion for summary judgment on July 22, 1999, and her own affidavit for the same purpose on July 28, 1999. Both affidavits stated that Grover had informed Dr. Smith of her severe headaches and that he should have referred her to a medical doctor.

On September 29, 1999, Grover submitted the affidavit of Dr. John Thurmond (Dr. Thurmond), a dentist licensed in Nebraska. At the time of his affidavit, Dr. Thurmond was a professor at Creighton University School of Dentistry.[1] Grover selected Dr. Thurmond because Idaho State University has a dental education compact with Creighton University.[2] Dr. Thurmond's affidavit stated that he spoke with Idaho dentists, who under the condition on anonymity shared their opinions regarding the local standard of care. Based upon his knowledge and experience, and those discussions, he determined

1. Dr. Thurmond is now the Director of Advanced Education Program and the Orlando Summers Professor in General Dentistry at the University of Missouri Dental School in Kansas City, Missouri.

2. Idaho State University signed the dental education compact with Creighton University in March of 1982, with the first class entering in August of 1982. Idaho students receive partial tuition remission, and have the option of taking their first year of classes at Idaho State University. The remaining three years of education are received at Creighton University.

that there was one standard of care for Idaho, which was also the national standard for dentists, and that he was familiar with both standards. Dr. Thurmond asserted that Dr. Smith had failed to meet the minimum level of care owed to Grover.

The summary judgment hearing was continued four times, so that Dr. Thurmond could be deposed, and discovery could be completed. Dr. Thurmond was deposed on January 21, 2000, in Omaha, Nebraska. However, Dr. Smith's counsel was unable to complete his questioning within the time allotted for the deposition, and Grover's counsel was unable to ask any follow-up or clarifying questions. Dr. Thurmond filed a supplemental affidavit on February 18, 2000. In it, he states that of the Idaho dentists with whom he spoke, only one wished to be identified by name. He also reaffirmed the statements in his first affidavit, specifically his opinion that Dr. Smith had violated the minimum standard of care owed to Grover.

The hearing on the motion for summary judgment and the motion to strike were heard on March 3, 2000.[3] Dr. Smith argued that Grover's out-of-state expert failed to demonstrate the requisite familiarity with the standard of care for a practicing general dentist in Fruitland, Idaho, at the time Grover received treatment. In an order dated March 24, 2000, the district court found that Dr. Thurmond's affidavits lacked adequate foundation under I.R.C.P. 56(e) and granted the motion to strike his testimony. The district court then granted the motion for summary judgment.

Grover filed this timely appeal. She argues that Dr. Thurmond's affidavits meet the requirements of I.R.C.P. 56(e), and that he was adequately familiar with the community standard of care for a practicing general dentist in Fruitland, Idaho. Because she provided expert testimony that contradicted the information provided by Dr. Smith in his affidavit, a genuine issue of material fact existed; therefore, the grant of summary judgment was improper.

## II.

## STANDARD OF REVIEW

In *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 327, 940 P.2d 1142, 1146 (1997), this Court set forth the following standard of review:

When this Court reviews a district court's decision on summary judgment, it employs the same standard as that properly employed by the trial court when originally ruling on the motion. *Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). Finally, this Court liberally construes all disputed facts and will draw all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Thomson*, 126 Idaho at 529, 887 P.2d at 1036. This is the proper standard to be applied in medical malpractice actions as well.... *Rhodehouse v. Stutts*, 125 Idaho 208, 210–11, 868 P.2d 1224, 1226–27 (1994).

Our standard of review for a decision whether to admit expert testimony is clear: that decision is within the sound discretion of the trial court, and will not be overturned except upon a showing of abuse of discretion. *State v. Rubbermaid Inc.*, 129 Idaho 353, 357, 924 P.2d 615, 619 (1996).

*Kolln*, 130 Idaho at 327, 940 P.2d at 1146.

## III.

## ANALYSIS

**A. The District Court Erred In Finding That Dr. Thurmond Had Not Adequately Familiarized Himself With The Local Standard Of Care Pursuant To I.C. §§ 6–1012, –1013.**

Grover argues that Dr. Thurmond's affidavits meet the requirements set forth in

---

3. Grover had also filed a motion to amend to permit a request for punitive damages. Grover's

motion was rendered moot by the district court's grant of summary judgment.

I.R.C.P. 56(e), and that they were sufficient to withstand summary judgment under I.C. §§ 6–1012, –1013. We agree.

Appellant suggests that Idaho Code sections 6–1012 and 6–1013 do not preclude using a statewide standard of care for general dentists in Idaho. Grover states that Dr. Thurmond's testimony demonstrates that he spoke with dentists practicing in Idaho, possessed knowledge about the national and Idaho standards for dentists, taught Idaho dentistry students at Creighton University, and observed the Idaho State Dental Board Examination being administered to future Idaho dentists at Creighton University. Grover argues that Dr. Thurmond has more than familiarized himself with the community standard of care. Dr. Thurmond's testimony focuses on very basic principles of dentistry that do not vary from town to town in Idaho. Grover points out that Fruitland is no longer a remote town in western Idaho; since the passage of the statutes in question twenty-five years ago, we now have the free exchange of scientific information and instant access to other dentists through the Internet. There has also been the adoption of national standards in the State Dental Practice Act. I.C. §§ 54–901 to –934. Grover contends that Dr. Smith did not establish that the Fruitland standard of care differs from the statewide standards that encompass elementary principles of dentistry like taking a patient's medical history.

"[T]he question of how to qualify an out-of-area physician to render an opinion in a medical malpractice case 'has plagued the bench and trial bar since the enactment of Idaho's statutory structure ... requiring proof [of] actual knowledge of the local standard of care.' " *Keyser v. Garner*, 129 Idaho 112, 117, 922 P.2d 409, 414 (Ct.App.1996).

This Court has examined a number of cases where a defendant moved for summary judgment based on the allegation that the plaintiff's out-of-state expert insufficiently familiarized himself with the local standard of care. Although these cases do not provide a clear-cut set of rules on what an out-of-state expert must do to become familiar with the local standard of care, these cases demonstrate that this Court has been willing to affirm a district court's grant of summary judgment on this basis when the plaintiff's expert failed to contact any local physician. Likewise, this Court has been reluctant to grant a defendant's motion for summary judgment when the plaintiff's expert did consult a local physician possessing expertise on the area at issue. *Dekker v. Magic Valley Reg'l Med. Ctr.*, 115 Idaho 332, 334, 766 P.2d 1213, 1215 (1988) (affirming grant of summary judgment when out-of-state experts did nothing to establish familiarity with the local standard of care); *Evans v. Griswold*, 129 Idaho 902, 905, 935 P.2d 165, 168 (1997) (affirming grant of summary judgment because plaintiff's expert, an ophthalmologist, was a physician, and thus the standard of care he was familiar with differed significantly from that of the defendant, an optometrist, who was not a physician); *Hoene v. Barnes*, 121 Idaho 752, 828 P.2d 315 (1992) (vacating grant of summary judgment because in cases involving a physician practicing in a unique specialty, such as cardiovascular surgery, plaintiff's expert may be unable to familiarize himself with the local standard by conversing with a local physician and no "similar Idaho communities" may exist, thus necessitating testimony from an out-of-state physician); *Dunlap By and Through Dunlap v. Garner*, 127 Idaho 599, 903 P.2d 1296 (1994) (reversing summary judgment because the trial court's job was to look to the affidavit itself and determine whether the alleged facts, if taken as true, would render the evidence admissible, not to weigh conflicting evidence as to the truthfulness of the expert's affidavit); *Rhodehouse*, 125 Idaho at 212–13, 868 P.2d at 1228–29 (affirming summary judgment because expert's only showing of knowledge of the local standard was his unsupported conclusory statement—he did not contact any local physician and the local standard of care was not discussed in the deposition that he reviewed); *Watts v. Lynn*, 125 Idaho 341, 347, 870 P.2d 1300, 1306 (1994) (reversing grant of summary judgment because expert familiarized himself with local standards by conferring with a local dentist); *Strode v. Lenzi*, 116 Idaho 214, 216, 775 P.2d 106, 108 (1989) (affirming summary judgment where nationally certified expert claimed that his familiarity with standards set by Ameri-

can Academy of Orthopedic Surgeons was sufficient to familiarize himself with local standards); and *Frank v. East Shoshone Hosp.*, 114 Idaho 480, 482, 757 P.2d 1199, 1201 (1988) (affirming summary judgment where expert failed to contact any local physicians and was thus unfamiliar with the local standard).

■ Two Idaho Code provisions are an essential part of the analysis as to whether an expert's affidavit in a medical malpractice action can survive a summary judgment action. *Kolln*, 130 Idaho at 328–29, 940 P.2d at 1147–48. Idaho Code section 6–1012 requires that direct expert testimony establish the community standard of health care. *Id.*; I.C. § 6–1012. The expert must also testify that the health care provider did not meet the standard of care applicable to his or her particular field of health care and specialty. *Kolln*, 130 Idaho at 329, 940 P.2d at 1148. "Idaho Code section 6–1013 requires that the expert must show that he or she actually holds the opinion, that it is held with a reasonable degree of medical certainty, and that he or she is not only an expert but has *actual knowledge of the applicable community standard.*" *Id.*

Regarding the relation between Rule 56(e) and I.C. §§ 6–1012, –1013, this Court has noted, "the question of admissibility under Rule 56(e) is a threshold question to be analyzed before applying the liberal construction and reasonable inference rules required in summary judgment." *Rhodehouse*, 125 Idaho at 211, 868 P.2d at 1227. Rule 56(e) provides an additional requirement that "the affidavits must 'set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' " *Id.* at 212, 868 P.2d at 1228.

■ Experts testifying as to the standard of care in medical malpractice actions must show that they have familiarized themselves with the standard for a particular profession for the relevant community and time. *See Kolln*, 130 Idaho at 331, 940 P.2d at 1150. They must also state how they became familiar with the standard of care for the particular health care professional. *Id.* An out-of-state expert can become familiar with the local standard of care by inquiring of a local specialist or by "review of a deposition stating that the local standard does not vary from the national standard, coupled with the expert's personal knowledge of the national standard." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51–52, 995 P.2d 816, 821–22 (2000).

■ In this case, Dr. Thurmond, a general dentist from Omaha, Nebraska, testified in his deposition that he was licensed to practice dentistry in Nebraska. Dr. Thurmond was employed as the Chairman of the Department of Oral Diagnosis and Radiology at Creighton University School of Dentistry. Because the school had a reciprocity program with Idaho dentistry students, Dr. Thurmond taught Idaho students, and observed the administration of the Idaho State Dental Board Examination. He was very familiar with the minimum skills needed to successfully pass the Idaho examination. Dr. Thurmond testified that to gain familiarity with the local standard of care, he relied on his own experience and also spoke with Idaho dentists regarding their opinions on "the standards of care for dentists practicing in Fruitland during 1995, 1996, and 1997." However, he noted that these dentists spoke with him on the condition of anonymity. In his second affidavit, Dr. Thurmond stated that in forming his opinion, he had spoken with Dr. Clay Wilcox, a Boise dentist. It should be noted that, standing alone, Dr. Wilcox and anonymous dentists would be insufficient to meet the requirements of I.C. § 6–1013.

In his affidavit, Dr. Thurmond stated that in his opinion, there was one standard of care for all dentists in Idaho, and that standard did not differ from the national standards, with which he was very familiar. Even more important, Dr. Thurmond stated that the *fundamental standard at issue is one that* would not vary from town to town in Idaho. Taking a health history of a patient is a basic, elementary standard for all dentists in Idaho. Having observed the administration of the Idaho State Dental Board Examination, Dr. Thurmond testified that an Idaho dental student who did not take a health

history of the patient during the exam would fail it. The standard is basic and applicable to all dentists in Idaho, whether in Fruitland, Boise, or Lewiston. No local standard of care would result in this minimum standard being altered in any way.

■ Respondent's suggestion that, if local dentists so chose, community standards of care could fall below minimum statewide standards is not persuasive. At issue in this case is a minimum statewide standard of care, not a lack of advanced technology, conditions unique to the area, or particular specializations with which the expert is unfamiliar. While it may be understood that a small Idaho town may not have the technology used in a big city, thus necessitating a different local standard of care, choosing not to adhere to the basic dental standards established by the Idaho Board of Dentistry is not. Taking a patient's medical history is a minimum requirement that must be met to become a licensed dentist in Idaho. Respondent's contention that professionals in a community could decide to adopt a local standard of care that is inferior to the bare minimum statewide standards is without merit.

Dr. Thurmond testified that in his opinion to a reasonable degree of medical certainty, Dr. Smith breached the standard of care applicable to him as a dentist practicing in Fruitland in 1995, 1996, and 1997, with respect to his care of Sharon Grover. Dr. Thurmond felt that this duty was breached for a multitude of reasons, most notably because Dr. Smith had not taken a current health history from Grover.

The district court found Dr. Thurmond's testimony inadmissible stating:

> To oppose this assertion, the Plaintiff has tendered the affidavits of Dr. Thurmond, a dentist living in Nebraska (now Missouri) and teaching at a dental school. Dr. Thurmond alleges that he acquainted himself with the community standard by reviewing the case with one Boise dentist, two anonymous Nampa dentists and by reviewing the testimony of a Boise dentist in an unrelated law suit. From this, Dr. Thurmond determined that Dr. Smith breached the standard.

> The above-mentioned dentists have never practiced general dentistry in the Idaho localities served by Holy Rosary Medical Center. As a consequence, the Court finds that Dr. Thurmond's opinion lacks adequate foundation under I.R.C.P. 56(e).

■ The district court erred by finding Dr. Thurmond's testimony inadmissible. The district court misstated the test when it determined that Dr. Thurmond's opinion lacked adequate foundation because the dentists he spoke with had "never practiced general dentistry in the Idaho localities served by Holy Rosary Medical Center." This Court has never held that an expert must speak with a professional who *practiced* in the same geographic area as the defendant to become familiar with the local standard of care. In *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 995 P.2d 816 (2000), this Court explained,

> Experts testifying as to the standard of care in medical malpractice actions must show that they have familiarized themselves with the standard for a particular profession for the relevant community and time. *See Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 331, 940 P.2d 1142, 1150 (1997). They must also state how they became familiar with the standard of care for the particular health care professional. *Id.*

A common means for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local specialist. *See, e.g., Watts v. Lynn*, 125 Idaho 341, 347, 870 P.2d 1300, 1306 (1994); *Strode v. Lenzi*, 116 Idaho 214, 216, 775 P.2d 106, 108 (1989). *This is not, however, the only means for obtaining knowledge of the local standard of care.* An expert's review of a deposition stating that the local standard does not vary from the national standard, coupled with the expert's personal knowledge of the national standard, is sufficient to lay a foundation for the expert's opinion. *See Kozlowski [v. Rush]*, 121 Idaho [825] at 828–29, 828 P.2d [854] at 857–58 [(1992)]. *See also Rhodehouse v. Stutts*, 125 Idaho 208, 212, 868 P.2d 1224, 1228 (1994) (stating that, although the reviewed deposition was defective, "it may be possible for an

expert to become familiar with the local standard of care by reviewing the defendant doctor's deposition.").

*Perry,* 134 Idaho at 51–52, 995 P.2d at 821–22 (emphasis added).

An examination of the wording found in I.C. §§ 6–1012, –1013 does not mandate the conclusion reached by the district court. Nothing in the language of either code section precludes an expert witness, when forming his opinion, from relying on a statewide standard of care that has been adopted by that profession's governing board. Idaho Code section 6–1012 provides in relevant part:

> [P]laintiff must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician and surgeon, hospital or other such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she, or it was functioning. *Such individual providers of health care shall be judged in such cases in comparison with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any.*

I.C. § 6–1012 (emphasis added).

Idaho Code section 6–1013 further underscores the intent of I.C. § 6–1012. It states:

> The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefore is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed; provided, *this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial.*

I.C. § 6–1013 (emphasis added).

By having the powers to license and discipline dentists pursuant to I.C. §§ 54–912, –918, –924, the Board of Dentistry has the authority to establish a minimum standard of care for practicing dentistry anywhere in Idaho. The standard of care anywhere in Idaho cannot be below the standard required to have the fitness to be licensed. Dr. Thurmond observed applicants being administered the Idaho State Dental Board Examination. From his observations of the licensing examinations, Dr. Thurmond learned of certain minimum standards established by the Board of Dentistry that apply statewide. Specifically, he learned that taking a health history of a patient is a basic, elementary standard to become licensed as a dentist in Idaho. On a motion for summary judgment, a court must liberally construe all disputed facts and draw all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. In this case, Grover should have been given the benefit of all reasonable inferences, and Dr. Thurmond's affidavits should have been allowed by the district court.

## IV.

## CONCLUSION

The affidavits and deposition testimony provided by Grover to qualify her out-of-state expert complied with I.C. §§ 6–1012, –1013. Grover demonstrated that Dr. Thur-

mond possessed ample knowledge of Idaho dentistry standards through his experience as a professor and examination observer.

Viewing the facts and inferences in a light most favorable to Grover, the nonmoving party, this Court reverses the district court's judgment and remands this case for further proceedings consistent with this opinion. Costs to appellant.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN concur.