# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39473

| | | |
|---|---|---|
| HEATHER HALL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Pocatello, May 2013 Term |
| | ) | |
| v. | ) | 2013 Opinion No. 98 |
| | ) | |
| ROCKY MOUNTAIN EMERGENCY | ) | Filed: September 6, 2013 |
| PHYSICIANS, LLC; KURTIS HOLT, M.D.; | ) | |
| RANDALL FOWLER, M.D.; and JEFF | ) | Stephen Kenyon, Clerk |
| JOHNSON, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

The judgment of the district court is affirmed.

Browning Law, Idaho Falls, for appellant. Alan Browning argued.

Quane Jones McColl, PLLC, Boise, for respondents. Terrence S. Jones argued.

_____

HORTON, Justice.

This appeal arises from a medical malpractice claim brought against a physician's assistant, two supervising physicians, and Rocky Mountain Emergency Physicians, L.L.C. (collectively Rocky Mountain). Heather Hall presented at the emergency room complaining of headache, blurry vision, and sensitivity to light. Jeff Johnson, a physician's assistant, examined Hall. As part of his examination, he took Hall's pulse and listened to her heart through a stethoscope. Hall alleges that Johnson removed her bra without her consent and touched her inappropriately while claiming to listen to her heart. Hall's medical expert submitted an affidavit stating this conduct fell below the standard of care for a physician's assistant working in an emergency room in Pocatello. Rocky Mountain moved for summary judgment, arguing that Hall's expert's affidavit lacked proper foundation. After finding that the affidavit failed to satisfy the requirements of I.C. §§ 6-1012 and 6-1013 and was therefore inadmissible, the district court granted Rocky Mountain's motion and dismissed the action. Hall timely appealed. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2009, Heather Hall sought treatment for severe headache pain at the Portneuf Medical Center emergency room in Pocatello, Idaho. Jeff Johnson, a physician's assistant, was assigned to examine and treat her. According to Hall, Johnson informed her that she would need to undress from the waist up. She removed her shirt and put on a hospital gown but left her bra on. Johnson told her that he needed to check her heartbeat and that her bra wire was in his way. Hall's affidavit described the events that followed:

> Without consent, Johnson then completely lifted my bra up and over, exposing my left breast, looked under my gown and brushed his hand over my left nipple, the [sic] continued with the stethoscope while resting his hand on my left breast for approximately 15-20 seconds, while claiming to check my heartbeat.

Based upon this conduct, Hall brought claims against Johnson, his supervising physicians Kurtis Holt and Randall Fowler, and Rocky Mountain Emergency Physicians, L.L.C. Hall's complaint asserted claims of battery, intentional infliction of emotional distress, and invasion of privacy. Rocky Mountain moved for summary judgment, arguing that Johnson had immunity from civil liability based upon I.C. § 39-1391c and that Hall's claim was governed by the expert testimony requirements of I.C. §§ 6-1012 and 6-1013. Rocky Mountain's motion for summary judgment was supported by the affidavits of Johnson, Dr. Fowler and Dr. Holt, in which they each stated that their conduct during Hall's visit to the emergency room met the applicable standard of health care practice.

In response, Hall submitted the affidavit of Dr. David Bowman, an Idaho Falls physician. In his affidavit, Dr. Bowman stated that he was familiar with the standard of care for physicians and physician's assistants working in emergency rooms in Pocatello. He explained that he had come by that knowledge by hiring a doctor from Pocatello who had emergency room privileges, personally observing the emergency room at Portneuf Medical Center, and consulting with a Pocatello emergency room physician regarding Hall's case.

Dr. Bowman also asserted that I.C. § 54-1814(22) established a statewide standard of care that Johnson violated. This statute is part of the Medical Practice Act and provides that physician assistants are subject to discipline for "[e]ngaging in any conduct which constitutes an abuse or exploitation of a patient arising out of the trust and confidence placed in the physician by the patient." I.C. § 54-1814(22). Dr. Bowman opined that every doctor in Idaho "knows that

2

fondling a patient in the course of medical examination or treatment violates this section of the Idaho Code and subjects him or his physician assistant to discipline if he engages in it."

The district court rejected Johnson's claim of immunity based upon I.C. § 39-1391c. This ruling is not an issue in this appeal. The district court then determined that Hall's claims were governed by the requirements of I.C. §§ 6-1012 and 6-1013. Hall does not challenge this determination. The district court then held that Dr. Bowman's affidavit did not establish his familiarity with the standard of care for Pocatello emergency rooms at the time of the incident, thus rendering it inadmissible. The district court did not address Dr. Bowman's claim that I.C. § 54-1814(22) established a statewide standard of care. The district court determined that Hall had failed to demonstrate the existence of a genuine issue of material fact and that Rocky Mountain was entitled to a grant of summary judgment and dismissed Hall's complaint.

On appeal, Hall argues that Dr. Bowman's affidavit was adequate to demonstrate his familiarity with the standard of care for Pocatello physicians and physician's assistants working in emergency rooms in June of 2009. She further argues that groping a patient during a medical exam violates the statewide standard of care established by I.C. § 54-1814(22).

## II. STANDARD OF REVIEW

The admissibility of the expert testimony is an issue that is separate and distinct from whether that testimony is sufficient to raise genuine issues of material fact sufficient to preclude summary judgment. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997); *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994). When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party. *Mitchell v. Bingham Mem'l Hosp.*, 130 Idaho 420, 942 P.2d 544 (1997). The liberal construction and reasonable inferences standard does not apply, however, when deciding whether or not testimony offered in connection with a motion for summary judgment is admissible. *Kolln v. Saint Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 940 P.2d 1142 (1997); *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994). The trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible. *Rhodehouse v. Stutts*, 125 Idaho 208, 868 P.2d 1224 (1994). This Court reviews challenges to the trial court's evidentiary rulings under the abuse of discretion standard. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 995 P.2d 816 (2000).

*Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163-64, 45 P.3d 816, 819-20 (2002).

## III. ANALYSIS

**A. The district court did not abuse its discretion by holding that Dr. Bowman's affidavit lacked adequate foundation.**

Hall's complaint contained five counts. The first three counts were directed at Johnson personally, and included claims of battery, intentional infliction of emotional distress and invasion of privacy. The fourth count alleged that Drs. Holt and Fowler were negligent in their supervision of Johnson. The fifth count alleged that Rocky Mountain Emergency Physicians, L.L.C. was liable under the doctrine of respondeat superior. Despite the fact that Hall's complaint advanced intentional tort claims, the district court held that "the case is treated as a standard medical malpractice case." This decision was evidently based upon Rocky Mountain's citation to *Litz v. Robinson*, 131 Idaho 282, 955 P.2d 113 (Ct. App. 1987), a decision from the Court of Appeals which held that, despite the plaintiff's "artfully labeling his cause of action as a claim for the intentional infliction of emotional distress," the gravamen of the action was medical malpractice and was therefore subject to the requirements of Idaho Code sections 6-1012 and 6-1013. Hall explicitly states that she does not challenge this ruling on appeal. Rather, she contends that Dr. Bowman's affidavit satisfies the requirements of these statutes.

To avoid summary judgment in a medical malpractice action "a plaintiff must provide expert testimony that the defendant doctor, or other health care provider, 'negligently failed to meet the applicable standard of health care practice.' " *Suhadolnik v. Pressman*, 151 Idaho 110, 115, 254 P.3d 11, 16 (2011) (quoting *Dulaney*, 137 Idaho at 164, 45 P.3d at 820). Expert testimony is only admissible if it meets the foundational requirements of I.C. § 6-1013. *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. The expert's testimony must establish:

> (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with a reasonable degree of medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed . . . .

I.C. § 6-1013. Rule 56(e) imposes additional requirements on expert testimony offered in a medical malpractice action.

> The party offering such evidence must show that it is based upon the witness' personal knowledge and that it sets forth facts as would be admissible in evidence. The party offering the evidence must also affirmatively show that the witness is competent to testify about the matters stated in his testimony. Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under Rule 56(e).

4

*Dulaney*, 137 Idaho at 164, 45 P.3d at 820 (citations omitted).

The first issue we consider is whether Dr. Bowman's affidavit established that he had familiarized himself with the applicable standard of health care practice. The "applicable standard of care" is defined in I.C. § 6-1012 and is comprised of three related components. First, it is the standard of care "for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any." *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. Second, it is the standard as it existed "at the time of the defendant's alleged negligence." *Id*. Third, it is the standard of care "in the same community." *Id*. Put more concisely, experts in medical malpractice cases must be able to demonstrate their familiarity with the standard of care for the class of the medical provider at the time and in the community of the alleged malpractice.

An expert witness need not have actually practiced in the community where the alleged malpractice occurred to be competent to testify. Idaho Code § 6-1013 provides that "this section shall not be construed to prohibit or otherwise preclude a competent expert witness who resides elsewhere from adequately familiarizing himself with the standards and practices of (a particular) such area and thereafter giving opinion testimony in such a trial." However, an out-of-area expert's affidavit must state how he became familiar with the local standard of care. *Dulaney*, 137 Idaho at 164, 45 P.3d at 820. "One method for an out-of-area expert to obtain knowledge of the local standard of care is by inquiring of a local specialist." *Id*. However, even speaking with a local specialist is not a strict requirement. "The plaintiff's expert can also make inquiries to another out-of-area specialist, so long as that specialist has had sufficient contacts with the area in question to demonstrate personal knowledge of the local standard." *Suhadolnik*, 151 Idaho at 116, 254 P.3d at 17.

This Court's discussion in *Dulaney* provides a good example of how this works in practice. There, the malpractice action was brought against an emergency room physician who practiced in Boise. The plaintiff's expert was not a Boise emergency room physician, and attempted to become familiar with the local standard of care for emergency room physicians during the relevant time period. He consulted with a Boise physician who practiced internal medicine at the Boise V.A. hospital. However, this Court held that the expert's affidavit did not meet the foundational requirements for expert testimony in a medical malpractice case because the affidavit did not show that the consulting physician was familiar with the local standard of

5

care for an emergency room physician. The local physician was board-certified to practice emergency medicine, but there was no showing in the affidavit that he had ever worked in an emergency room in Boise, let alone during the relevant time period. This Court noted:

> It may certainly be possible that while practicing internal medicine in Boise, [the consulting physician] became familiar with the local standard of care for emergency room physicians. There are no facts in the record so showing, however. Likewise, it may be that with respect to the care at issue in this case, the local standard for a physician practicing internal medicine is the same as that for a physician practicing emergency room medicine. Again, however, there are no facts in the record so showing.

*Dulaney*, 137 Idaho at 166-67, 45 P.3d at 822-23. Thus, in order to provide admissible testimony, the expert need only demonstrate how he or she became familiar with the applicable standard of health care practice.

Dr. Bowman's affidavit, dated September 14, 2011, explains his efforts to become familiar with the standard of practice for emergency room care in Pocatello:

> a.    I previously hired a doctor from Pocatello to work for me, and he had emergency room privileges in Pocatello. Through him, I became aware the standard of care of emergency room treatment in Pocatello was the same as the standard of care of emergency room treatment in Idaho Falls.

> b.    I have evaluated the emergency room at Portneuf Medical Center, and the standard of care in use there was the same as the standard of care in Idaho Falls, and I am qualified to treat patients in the emergency room in Idaho Falls at EIRMC, and have been so qualified for many years, and have been familiar with the standard of care of emergency room doctors in Idaho Falls for many years.

> c.    Prior to signing this affidavit, I personally spoke to another medical doctor in Pocatello who also has privileges to practice emergency medicine in Pocatello. I described the conduct to that physician which Heather Hall described in her complaint[1] in this case which she states occurred on or about June 5, 2009, and asked him if that conduct met the conduct expected of a doctor seeing a patient in the ER in a Pocatello hospital for a headache. He stated that it did not.

> d.    I have been told that none of the defendants in this case, who all practice emergency medicine in Pocatello, have stated in their affidavits that the conduct described in Heather Hall's complaint as occurring on June, 5, 2009, met the standard of care expected of physicians practicing emergency medicine in Pocatello, Idaho. I am sure they could not; as such a contention would be utter nonsense.

---

[1] Hall's complaint describes the incident exactly as set forth in her affidavit in opposition to Rocky Mountain's motion for summary judgment.

The district court found that Dr. Bowman's affidavit did not meet the requirements of I.R.C.P. 56(e) and I.C. §§ 6-1012 and 6-1013. While the district court stated that the affidavit suffered from "several fatal deficiencies," the only deficiencies cited by the district court were the fact that Dr. Bowman's medical specialty was not disclosed and that his affidavit failed to show that the two unidentified doctors whom Dr. Bowman had consulted were knowledgeable about the standard of care at the "specific time of the alleged malpractice." We will discuss these issues in turn.

1. Dr. Bowman's opinion was not inadmissible solely due to his failure to disclose his medical specialty.

 "Health care providers are to be judged in comparison with similarly trained and qualified providers of the same class in the same community." *Dekker v. Magic Valley Reg'l Med. Ctr.*, 115 Idaho 332, 334, 766 P.2d 1213, 1215 (1988). This does not require that the expert be of the same medical specialty as the defendant health care provider.

> There is no requirement in these statutes that an expert witness whose testimony is offered to establish a case of medical malpractice against a board-certified physician must also be board-certified in the same specialty. We specifically hold that to fulfill the requirement of presenting expert testimony in a medical malpractice case against a board-certified specialist, plaintiff may offer the testimony of a physician who is not board-certified in the same specialty as the defendant physician, so long as the testimony complies with the requirements of I.C. §§ 6-1012 and 6-1013.

*Pearson v. Parsons*, 114 Idaho 334, 337, 757 P.2d 197, 200 (1988). In *Pearson*, the defendant doctors argued that the expert's affidavit was not admissible because he did not share their specialty. The expert was not board-certified in either pediatrics or surgery as were the defendant doctors. This Court held that it was unnecessary for the expert to be of the same specialty as the defendants so long as the affidavit testimony met the requirements of I.C. §§ 6-1012 and 6-1013. *Id.* "Additionally, when consulting with a local specialist, that specialist need not have practiced in the same field as the defendant, so long as the consulting specialist is sufficiently familiar with the defendant's specialty." *Suhadolnik*, 151 Idaho at 116, 254 P.3d at 17. Thus, Dr. Bowman's affidavit was not inadmissible solely because he did not identify his own specialty. However, the omission was relevant to the district court's inquiry as to whether Dr. Bowman had demonstrated the requisite familiarity with the standard of health care practice for the defendants' specialties in Pocatello in June of 2009. This was clearly the issue on which the district court focused, as the court wrote: "Without knowing what kind of physician Dr. Bowman is, the Court is unable to

determine if he is competent to testify concerning the emergency room care provided by a physician's assistant."

2. <u>The district court did not abuse its discretion in determining that Dr. Bowman's affidavit failed to demonstrate familiarity with the standard of care at the time of the incident.</u>

The district court then focused on the second component of the applicable standard of health care practice, i.e., the standard that existed at the time of the alleged malpractice. The district court wrote:

> [W]hile Dr. Bowman, an Idaho Falls doctor, describes that he inquired of two other physicians to familiarize himself with the applicable standard of care in Pocatello, he does not name the two physicians. Dr. Bowman states that one of the familiarizing physicians he inquired of *had* emergency room privileges in Pocatello previously, but there is no mention of the specific *time* period. Dr. Bowman also states that the other familiarizing physician he spoke with currently *has* emergency room privileges in Pocatello, but there is no indication that this physician has knowledge of what the standard of care *was* at the specific time period relevant to this case.

In *Mains v. Cach*, 143 Idaho 221, 141 P.3d 1090 (2006), this Court reversed a grant of summary judgment, holding that an affidavit sufficiently set forth how an expert became familiar with the applicable standard of health care practice by stating:

> I have acquainted myself with the local standard of care for surgeons and neurosurgeons who perform the same surgery as that performed upon Mrs. Mains by discussing those standards of care with Brent H. Greenwald, M.D., 3200 Channing Way, Idaho Falls, Idaho 83404. Dr. Greenwald advised me that the standard of care for evaluating a patient such as Mrs. Mains and determining whether or not particular types of surgeries including fusion surgery should be performed, during the calendar year 2000 in Idaho Falls, Idaho. It was and is my understanding that Dr. Greenwald during all relevant times including 2000 was a neurosurgeon licensed to practice in the State of Idaho with an active practice in Idaho Falls. Dr. Greenwald advised me as to the local standard of care for such patients with low back pain and whether or not spinal fusion surgery is or is not required. Dr. Greenwald specifically advised me as to the local standard of care that existed in Idaho Falls during the relevant time period of the treatment of Mrs. Mains by Dr. Cach.

*Id*. at 223, 141 P.3d at 1092. This affidavit made it perfectly clear that the expert had consulted with a local physician familiar with the standard of care for the proper class of medical provider during the relevant time period.[2]

---

[2] *Mains* primarily dealt with an additional complication in that the expert's deposition testimony appeared to contradict his affidavit. No such complication is present in this appeal.

In this case, Dr. Bowman's affidavit does not explicitly identify how he became familiar with the standard of care for the time period in question. The district court correctly observed that the affidavit simply avers that Dr. Bowman was familiar with the appropriate standard of care at some unknown point in time, but does not specifically state how he became familiar with the standard of care that existed at the time of the incident giving rise to Hall's cause of action. The district court reached its decision by application of the governing legal standards and through the exercise of reason and the decision was within the outer boundaries of the district court's discretion. Therefore, unless Dr. Bowman was correct in his assertion that I.C. § 54-1814(22) established a statewide standard of care, the district court did not abuse its discretion in holding that the affidavit lacked the necessary foundation for admissibility.

## B. Statewide Standard

Hall argues that I.C. § 54-1814 creates a statewide standard of care that Johnson breached during his examination. Chapter 18 of Title 54 is known as the Medical Practice Act. I.C. § 54-1801. Its stated purpose is to "assure the public health, safety and welfare in the state by the licensure and regulation of physicians . . . ." I.C. § 54-1802. It also provides for the discipline of those licensed to practice medicine. I.C. § 54-1814. One of the listed grounds for discipline is "[e]ngaging in any conduct which constitutes an abuse or exploitation of a patient arising out of the trust and confidence placed in the physician by the patient." I.C. § 54-1814(22). Hall argues that inappropriately touching a female patient's breast during an exam is "an abuse or exploitation" of that patient in violation of the Medical Practice Act and that the Act establishes a statewide standard of care.

We have held that "where an expert demonstrates that a local standard of care has been replaced by a statewide or national standard of care, and further demonstrates that he or she is familiar with the statewide or national standard, the foundational requirements of I.C. § 6–1013 have been met." *Suhadolnik*, 151 Idaho at 116, 254 P.3d at 17. Rocky Mountain argues that the Medical Practice Act does not apply to civil actions for malpractice, but is limited to the regulation and licensure of physicians in Idaho.

This Court has held with regard to I.C. §§ 6-1012 and 6-1013 that "[n]othing in the language of either code section precludes an expert witness, when forming his opinion, from relying on a statewide standard of care that has been adopted by that profession's governing board." *Grover v. Smith*, 137 Idaho 247, 253, 46 P.3d 1105, 1111 (2002). In *Grover*, we

9

considered whether the statutes governing the practice of dentistry in Idaho created a statewide minimum standard of care. This Court held that "[b]y having the powers to license and discipline dentists pursuant to I.C. §§ 54-912, -918, -924, the Board of Dentistry has the authority to establish a minimum standard of care for practicing dentistry anywhere in Idaho." *Id*. There, the plaintiff's expert testified that "taking a health history of a patient is basic, elementary standard to become licensed as a dentist in Idaho." *Id*. We reasoned that "[t]he standard of care anywhere in Idaho cannot be below the standard required to have the fitness to be licensed." *Id*. Thus, because I.C. § 54-912 specifically dealt with the requirements for licensure in Idaho, the expert was familiar with those qualifications, and was able to testify that failing to take a patient's history fell below the standard required for licensure, we held that the expert was qualified to testify that there was a statewide standard that required dentists to take a patient's health history.

The statutes cited in *Grover*, accompanied by expert testimony, sufficiently established a minimum threshold for the standard of dental practice in Idaho. Idaho Code § 54-1814 does not serve the same purposes because it does not establish the requirements or qualifications for obtaining a medical license. Rather, the statute identifies the grounds for which a physician may be disciplined. Significantly, I.C. § 54-1814(7) applies the same standard as I.C. § 6-1012, authorizing disciplinary action against a physician who "fails to meet the standard of health care provided by other qualified physicians in the same community or similar communities, taking into account his training, experience and the degree of expertise to which he holds himself out to the public." I.C. § 54-1814(7). We are unable to conclude that the Legislature intended to identify a statewide standard of care by means of a statute that references a community standard of care. For this reason, we hold that I.C. § 54-1814(22) does not establish a statewide standard of health care practice and thus, we affirm the decision of the district court.

We note that the result of this appeal would have been different if Hall had identified a different statute before the district court and on this appeal, as there is a statute that does establish a statewide standard of care governing medical professionals which would apply to Johnson's conduct toward Hall. In 1996, the Legislature enacted I.C. § 18-919,[3] which clearly and unambiguously draws a line that health care providers may not cross, providing:

---

[3] The Board of Medicine has adopted a statewide standard of care that is virtually identical to that prescribed by this statute. IDAPA 22.01.01.101.04.d provides that physicians and physician assistants are subject to discipline for:
> Commission of any act of sexual contact, misconduct, exploitation or intercourse with a patient or former patient or related to the licensee's practice of medicine.

10

**Sexual exploitation by a medical care provider.** – (a) Any person acting or holding himself out as a physician, surgeon, dentist, psychotherapist, chiropractor, nurse or *other medical care provider* as defined in this section, who engages in *an act of sexual contact with a patient* or client, is guilty of sexual exploitation by a medical care provider. For the purposes of this section, consent of the patient or client receiving medical care or treatment shall not be a defense. This section does not apply to sexual contact between a medical care provider and the provider's spouse, or a person in a domestic relationship who is also a patient or client. Violation of this section is punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not to exceed one (1) year, or both.

(b) For the purposes of this section:

(1) "Intimate part" means the sexual organ, anus, or groin of any person, and *the breast of a female.*

(2) "Medical care provider" means a person who gains the trust and confidence of a patient or client for the examination and/or treatment of a medical or psychological condition, and thereby gains the ability to treat, examine and physically touch the patient or client.

(3) *"Sexual contact" means the touching of an intimate part of a patient or client for the purpose of sexual arousal, gratification, or abuse, and/or the touching of an intimate part of a patient or client outside the scope of a medical examination or treatment.*

(4) "Touching" means physical contact with another person, whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim.

(emphasis added). As this statute has not been identified in the course of these proceedings, we may not rely upon it to afford Hall the relief she seeks.

## IV. CONCLUSION

We affirm the decision of the district court granting summary judgment in favor of Rocky Mountain. Costs to Rocky Mountain.

---

i. Consent of the patient shall not be a defense.

ii. Section 101 does not apply to sexual contact between a medical care provider and the provider's spouse or a person in a domestic relationship who is also a patient.

iii. A former patient includes a patient for whom the physician has provided medical services or prescriptions within the last twelve (12) months.

iv. Sexual or romantic relationships with former patients beyond that period of time may also be a violation if the physician uses or exploits the trust, knowledge, emotions or influence derived from the prior professional relationship with the patient.

As previously noted, our decision in *Grover*, held that the Board of Dentistry had the authority to establish a minimum standard of care for practicing dentistry anywhere in Idaho. Likewise, the authority granted to the Board of Medicine by the Medical Practice Act, I.C. §§ 54-1801 to 54-1821 permits that body to establish a minimum statewide standard of care by adoption of this Rule.

Chief Justice BURDICK and Justices EISMANN and W. JONES, **CONCUR**.

J. JONES, Justice, specially concurring.

I wholeheartedly concur in the Court's holding that I.C. § 18-919 establishes a statewide standard of care governing medical professionals, as well as the Court's observation that the Idaho Board of Medicine has adopted a statewide standard of care in IDAPA 22.01.01.101.04.d. It practically goes without saying that any medical professional practicing in the State of Idaho violates the standard of care by sexually abusing or exploiting a patient.

I do have some concerns about the district court's analysis of the local standard of care issue and this Court's analysis and conclusions with respect to that issue in Part III.A.2 of the opinion. It seems to me that the Court is rather too strict in applying the standard for demonstrating familiarity with the community standard of care in Pocatello. However, there is no need to go into that because this was never an appropriate case for application for a community standard of care. There is no room for variation in the standard of care when it comes to misusing an intimate and confidential medical relationship for the purpose of exploiting or abusing a patient. Local option abuse and exploitation is obviously unacceptable.

I do not agree with the Court's conclusion in the fourth paragraph of Part III.B. that I.C. § 54-1814(22) does not establish a statewide standard of health care practice. I see no ground for drawing a distinction between statutes that pertain to licensure and those that pertain to disciplinary action. The second section of the Medical Practice Act, I.C. § 54-1802, states that the purpose of the Act "is to assure the public health, safety and welfare in the state by the licensure and regulation of physicians." (emphasis added.) There is no basis for distinguishing between the requirements for obtaining a medical license and those for keeping it. Engaging in exploitive or abusive conduct—whether sexual or otherwise—that breaches the position of trust bestowed by a medical license is as harmful to the patient as providing medical care that fails to comply with the local standard of care. Thus, I would hold that I.C. § 54-1814(22) does establish a statewide standard of health care practice, as does IDAPA 22.01.01.101.04.d, the regulation adopted by the Idaho Board of Medicine pursuant to this statutory provision.